The **ROBERT STIGWOOD GROUP LIMITED** et al., Appellants,

v.

Lon **HURWITZ**, individually and d/b/a January Enterprises Company, Evergreen Ltd., et al., Appellees.

No. 741, Docket 72-1093.

United States Court of Appeals, Second Circuit.

Argued June 12, 1972.

Decided June 29, 1972.

John S. McGeeney, Stamford, Conn. (Cummings & Lockwood, W. Alan Truesdale, Paul E. Knag, Stamford, Conn., David S. Fitzpatrick, New York City, on the brief), for appellees.

Robert C. Osterberg, New York City (Abeles & Clark, John L. Eastman, New York City, on the brief), for appellants.

Before KAUFMAN, HAYS and OAKES, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

For the third time within a year we are called upon to review interlocutory orders in a suit arising from alleged "pirate" performances of the rock opera *Jesus Christ Superstar*.[1] The Robert

---

1. See Robert Stigwood Group Ltd. v. Sperber, 457 F.2d 50 (2d Cir. 1972) ; Rice v. American Program Bureau, 446 F.2d 685 (2d Cir. 1971).

Stigwood Group Limited (Stigwood), Leeds Music Limited and Leeds Music Corporation, which hold the rights appurtenant to the United States copyright for the "dramatico-musical composition," brought this action for injunctive relief and damages in the Southern District of New York against the producer of the allegedly infringing performances, Lon Hurwitz, the agency which supplied the performers, Evergreen, Ltd., the theater owner, Jujamcyn Theatres Trust, and the general manager of the theater, Sam Schwartz. Stigwood and the Leeds companies have appealed from the order of Judge Croake denying a preliminary injunction[2] and the judgment dismissing the action as against Jujamcyn and Schwartz. Because we conclude that the appeal is moot and that we do not have appellate jurisdiction, the appeal is dismissed.

Although the background of *Jesus Christ Superstar* is fully set forth in our earlier decision in Robert Stigwood Group v. Sperber, 457 F.2d 50, 51–52 (2d Cir. 1972), a brief summary will aid in bringing this action into perspective. Leeds Music Corporation, the assignee of Leeds Music Limited, holds the United States copyrights for the opera as a "dramatico-musical composition" and for several of the individual songs as "musical compositions"; Stigwood holds the rights for stage productions and dramatic presentations. The enormous success of Stigwood's stage production apparently has spawned "pirate" performances around the country, and not surprisingly, Stigwood and the Leeds companies have been involved in extensive litigation to protect their copyrights.[3]

In this case, Stigwood was first alerted to possible infringing performances in Philadelphia by large-scale advertising for a series of performances of "Superstar, A Symphonic Rock Concert," at the Shubert Theater during the period December 24, 1971, through January 1, 1972. Upon learning that the concerts were to be produced by Hurwitz and performed by a group provided by Evergreen, Stigwood and the Leeds companies immediately sought injunctive relief after efforts to have the theater cancel the performances were rebuffed. Jujamcyn and Schwartz, respectively the owner and general manager of the theater, also were named as defendants, presumably to bolster plaintiffs' chances of collecting the money damages sought in the complaint, in the event they were successful in the infringement action. As we recounted above, Judge Croake, after holding a hearing, denied the motion for a preliminary injunction on December 22 on the authority of Rice v. American Program Bureau, 446 F.2d 685 (2d Cir. 1971), and the allegedly infringing performances went on as scheduled during the eight-day Christmas-New Year's holiday.

The issue presented at the outset is whether this court has jurisdiction to review the order denying the preliminary injunction. Although 28 U.S.C. § 1292(a)(1) permits appellate review of interlocutory orders refusing an injunction, we will not exercise that jurisdiction when the act sought to be enjoined has occurred during the pendency of the appeal and " 'there is no reasonable expectation that the wrong will be repeated.' " United States, v. W. T. Grant Co.,

---

2. In denying the preliminary injunction, Judge Croake relied on Rice v. American Program Bureau, 446 F.2d 685 (2d Cir. 1971). His order, filed on December 22, 1971, preceded our decision in Robert Stigwood Group Ltd. v. Sperber, 457 F.2d 50 (2d Cir. 1972), which reached a conclusion different from *Rice* because of the more complete record before the court in *Sperber*. Since the record on appeal in this case does not disclose the precise con-tours of the allegedly infringing performances, we cannot appraise, without more, the merits of plaintiffs' claim for injunctive relief. Suffice to say that future claims based on a record similar to that in *Sperber* will be judged in light of our decision there.

3. See cases cited in Robert Stigwood Group Ltd. v. Sperber, 457 F.2d 50, 51 n. 1 (2d Cir. 1972).

345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), *quoting from* United States v. Aluminum Co. of America, 148 F.2d 416, 448 (2d Cir. 1945). *See* 6A J. Moore, Federal Practice ¶57.13. Having appraised "all the circumstances," United States v. W. T. Grant Co., *supra*, 345 U.S. at 633, 73 S.Ct. 894, 97 L.Ed. 1303, we are convinced that the appeal from the order denying injunctive relief is moot.

The record before us clearly indicates that Hurwitz's production was a "one-shot" series of performances which long ago has come and gone. The lease between Hurwitz and Jujamcyn for the use of the Shubert Theater was for eight days—December 24 to January 1, 1972—and there is no evidence whatsoever or even the slightest indication that Hurwitz has planned or is planning other productions anywhere. Although it is true that a voluntary cessation of illegal conduct does not itself render the issue of injunctive relief moot, *see* SEC v. Culpepper, 270 F.2d 241, 249–250 (2d Cir. 1959), it is "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." United States v. W. T. Grant Co., 345 U.S. at 633, 73 S. Ct. at 898. The fact that neither Hurwitz nor Evergreen have entered an appearance in opposition to this appeal adds to the conclusion that future productions by these defendants are highly unlikely.[4] Moreover, our recent decision in *Sperber* undoubtedly has chilled any extant enthusiasm for future performances of the sort involved here. Finally, there is nothing to indicate that either Jujamcyn, the theater owner, or Schwartz, the theater manager, will become involved in any future infringing performances of Superstar.

This, however, does not end our consideration of whether we have appellate jurisdiction. Stigwood and the Leeds companies also appeal from so much of Judge Croake's order, and the judgment entered upon it, that dismissed their complaint as against Jujamcyn and Schwartz.[5] An order dismissing a complaint against some but not all of the defendants to an action, where claims against the remaining defendant remain to be tried, is not a final order appealable under 28 U.S.C. § 1291, unless the plaintiff secures a certificate from the district judge pursuant to Rule 54(b), F.R.Civ.P.[6] *See* Davis v. Nat'l Mortgage Co., 320 F.2d 90 (2d Cir. 1963); Tobin Packing Co. v. North American Car Corp., 188 F.2d 158 (2d

---

4. Stigwood's brief informs us also that the performances were a dismal failure both artistically and financially, with ticket refunds obtained through several state court actions. Brief of Appellants at 12–15.

5. Judge Croake dismissed Schwartz and Jujamcyn under Rule 12(b)(6) on the ground that the complaint failed to state a claim against them for copyright infringement. The fixed-rental lease between Jujamcyn and Hurwitz, which recorded a previous binding oral agreement, was a "four walls agreement"—that is, Jujamcyn relinquished all control over the performances to be given in the Shubert Theater during the eight-day lease. Judge Croake concluded, on the basis of the limited evidence adduced at the hearing on the preliminary injunction, that Jujamcyn had no knowledge of the character of the scheduled performances at the time the oral agreement was reached (Novem-

ber 15, 1971). Under these circumstances, it is unlikely that Jujamcyn or Schwartz would be liable for damages occasioned by an infringing performance. *See* Shapiro, Bernstein & Co. v. H. L. Green Co., 316 F.2d 304 (2d Cir. 1964).

6. Rule 54(b) provides in pertinent part: the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order . . . shall not terminate the action as to any of the parties, . . . . One reason given by Judge Croake in his order denying the Rule 54(b) certificate was that development of a fuller record at trial might lead to a different conclusion as to Jujamcyn and Schwartz's liability.

Cir. 1951); 6 J. Moore, Federal Practice ¶54.28[2]. Since Judge Croake expressly refused to grant such a certificate and claims for monetary relief against Hurwitz and Evergreen remain to be tried, we have no jurisdiction at this time to review his order of dismissal.[7]

■ Accordingly, the appeal is dismissed, with instructions to the district court to vacate that portion of its order of December 22, 1971, denying the preliminary injunction. *See* United States v. Munsingwear Inc., 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950); Duke Power Co. v. Greenwood County, 299 U. S. 259, 267–268, 57 S.Ct. 202, 81 L.Ed. 178 (1936); IB J. Moore, Federal Practice ¶0.416[6].[8]

7. Although it might be argued that the order dismissing Jujamcyn and Schwartz is appealable under 28 U.S.C. § 1292(a) (1) because it is in effect a refusal to issue an injunction against them, *see* Build of Buffalo, Inc. v. Sedita, 441 F.2d 284 (2d Cir. 1971), our holding that the issue of injunctive relief is moot forecloses this avenue of appeal.

8. The cited cases hold that an appellate court has the power to vacate the judg-

ment of a lower court where review of that judgment has been prevented by mootness. We consider it an appropriate exercise of our judicial power to vacate Judge Croake's order to insure that it can have no precedential value. Judge Croake, in his subsequent order denying a Rule 54(b) certificate, recognized that *Rice*, upon which he relied in denying the preliminary injunction, had been substantially modified by *Sperber*.